MEDART PULLEY COMPANY, Appellant, v. DUBUQUE TURBINE & ROLLER MILL COMPANY, Appellee.

**Sale of Machinery:** DELAY IN DELIVERY: WAIVER OF DAMAGES.
1   Where a contract is made to furnish certain machinery within a specified time and there is a failure to perform in time, subsequent acceptance is not in itself a waiver of the right to recoup the damage for delay in an action for the purchase price.

**Same.** Where plaintiff contracted to furnish machinery within a
2   certain time and failed to do so, but defendant thereafter accepted the same and upon refusal of the plaintiff to allow any damage for the delay paid therefor, with a knowledge that a third party might claim damage for failure to deliver in time, the defendant cannot in an action for the price of machinery subsequently purchased counterclaim for damages sustained by such delay.

*Appeal from Dubuque District Court.*—HON. FRED O'DON-NEL, Judge.

TUESDAY, OCTOBER 13, 1903.

THE opinion states the case.—*Reversed.*

*Henderson, Hurd, Lenehan & Kiesel* for appellant.

*McCarthy, Kenline & Roedell* for appellee.

WEAVER, J.—In the year 1899 the defendant, having a contract for the erection of an electric light and power plant at Mauston, Wis., ordered certain materials and

machinery from plaintiff, a company doing business in St. Louis. Plaintiff undertook to fill the order within a certain limited period, but failed to do so until a considerably later date, by reason of which defendant claims to have been injured. This failure of plaintiff to perform its contract within the agreed time, and defendant's claim for damage, was the subject of considerable correspondence between the parties, defendant refusing to pay the remainder of the purchase price until a settlement of its claim could be had. Finally, on March 20, 1900, and after plaintiff had distinctly refused to make any allowance or payment of damages, defendant remitted to plaintiff the entire balance of the bill, without making any deduction on account of its counterclaim for damages, the remittance being accompanied by a letter, as follows: "Medart Patent Pulley Co., St. Louis, Mo.—Gentlemen: We have just succeeded in getting freight bills so that we could estimate the extra cost of freight on the machinery that was shipped to Mauston over what it would have cost to have delivered it from here, and the difference is only a few dollars, and we will say nothing about it. We have not yet got a settlement with the parties, and do not know whether they are going to keep back anything from us on account of the delay in shipping the shafting or not. They were in very ill humor, and indicated that they would do so at the time, but as they have not put in any claim, we shall pay your bill, and trust to your doing the fair thing by us if we should suffer any loss on account of the delay. We understand they have kept the base plates, so we sent you the amount in full. Respectfully yours, Dubuque Turbine & Roller Mill Co." Thereafter, in July, 1900, defendant ordered other machinery and materials from plaintiff, and, failing to make payments therefor, this action was brought to recover the agreed price. To this action the defendant appeared, admitted the indebtedness sued upon, and pleaded a counterclaim for damages based

upon the first transaction, the history of which is above given. In support of the counterclaim it alleges that at the time it made payment for said first purchase it was not yet known whether the party for whom the defendant had erected the light and power plant at Mauston, Wis., would insist upon any damages by reason of the delay in the completion of such work, and that such facts did not develop until some time in April, 1900; when such claim was presented, and defendant company was compelled to pay, and did pay, in satisfaction thereof, the sum of $147.75. Plaintiff demurred to the counterclaim on the ground that from the statements contained in the pleading and in the correspondence thereto attached it appears that a complete settlement, accord, and satisfaction has been had between the parties concerning the matters involved in such claim, and that, payment having been made with full knowledge of all the material facts in the case, defendant has thereby waived the right to demand damages. The demurrer being overruled, and plaintiff electing to stand thereon without further pleading, the court entered judgment allowing the counterclaim in the sum of $147.75, and plaintiff appeals.

I. Under the admitted circumstances, can the defendant, after voluntarily paying in full for the machinery and materials purchased upon the first order, make the

1. SALE of machinery: delay in delivery: waiver of damages. delay in their delivery the basis of counterclaim or set-off to an action for the price of other machinery and materials subsequently ordered? Acceptance and use of goods after the date specified therefor in the order have been held to defeat a claim for damages on account of such delay. *Fraser v. Ross*, 1 Penn. (Del. Super.) 348 (41 Atl. Rep. 204); *Toplitz v. King, B. Co.* 46 N. Y. Supp. 418. The better doctrine, and the one most generally prevailing, is that while such acceptance and use are evidence from which, with other circumstances, a waiver of the claim may be found, yet,

ordinarily speaking, the purchaser may accept the delayed delivery, and recoup the damages, if any, in an action by the vendor for the purchase price. *Hansen v. Kirtley*, 11 Iowa, 565; *Jeffrey & Co. v. Central Co.*, (C. C.) 93 Fed. Rep. 408; *Ramsey v. Tully*, 12 Ill. App. 463; *Ruff v. Rinaldo*, 55 N. Y. 664; *Merrimack Co. v. Quintard*, 107 Mass. 127.

Under this rule, the defendant's acceptance of the belated delivery was not in itself a waiver of its right to demand damages, and it could have rightfully insisted upon an allowance thereof in reduction of the contract price. Of this right it did not avail itself. In its correspondence with plaintiff, extending from November, 1899, to March, 1900, the matter of defendant's claim for damages, accrued and prospective, on account of plaintiff's delay in filling the order, was a matter of disagreement and dispute. In the end defendant yielded the point, and paid the bill in full, simply expressing its reliance upon the plaintiff to "do the fair thing" in the event of its being required to suffer loss on account of the delay. The payment was voluntary, and was made with all the knowledge of the material facts. True, defendant did not yet know whether damages would be exacted by the party for whom the light and power plant was constructed, but it did know all the facts on which its liability for such damages was based. It is a familiar principle that money so paid, even though it be upon an unjust or unfounded demand, cannot be recovered back. *Boston & S. Glass Co. v. Boston*, 4 Metc. (Mass.) 181; *Muscatine v. K. & N. L. P. Co.*, 45 Iowa, 191; *Murphy v. Creighton*, 45 Iowa, 179; *Baldwin v. Foss*, 71 Iowa, 389

2. SAME.

It is urged, however, that the case before us does not come within the rule of the authorities cited. The point made is that defendant's counterclaim is in the nature of an affirmative cause of action, which had not fully developed when the payment was made, and cannot be pre-

sumed to have been thereby settled or waived. As already suggested, every fact on which defendant's liability to its customer was based was fully understood, and the money was paid over with express knowledge that such liability existed and might yet be enforced. Payment was made under no mistake as to the true situation, except, perhaps, in defendant's estimate of plaintiff's willingness to do what is denominated "the fair thing," should damages be exacted by the Mauston company. Mistakes of that kind are not unusual, but do not ordinarily furnish ground of legal or equitable relief. Applying the rule above stated, it has been said the fact that the party may be under embarrassment as to the amount which he should withhold or might properly be claimed as rebate from the contract price does not affect the principle. It was his right to litigate the question with the creditor, and his election to pay the full amount rather than to resist the payment of any portion of it makes the payment a voluntary one. *Regan v. Baldwin*, 126 Mass. 487 (30 Am. Rep. 689).

This conclusion is rendered still clearer when we consider the nature of the damages asserted by the defendant. Its right to such damages rests upon the right of recoupment as distinguished from "set-off," in the technical sense of that term, and from a statutory counterclaim based upon an independent cause of action. That the right to damages for delay in delivery of property sold is a right to recoup the same from the contract price, see *Schweickhart v. Stuewe*, 71 Wis. 1 (36 N. W. Rep. 605, 5 Am. St. Rep. 190). Recoupment is, as the word implies, the cutting out or reduction of a part of a creditor's demand, and is based upon some failure of the creditor to comply with the terms of the contract out of which the debt sued upon arises. See "Recoup," Anderson's Law Dict. It goes directly to the amount due the plaintiff. The defendant, asserting such right, does not admit his

indebtedness to plaintiff, and seek to set off against it
an indebtedness due from plaintiff to himself. He in-
sists that plaintiff has in some material respect failed to
perform his part of the contract on which the suit is
based, and that by reason of such failure he has never
become indebted to plaintiff to the full amount of the
agreed price. His counter demand goes directly to the
amount due the plaintiff, and, while perhaps not strictly
a defense, it has often been spoken of as such, or, at least,
as a partial defense. *McCullough v. Cox*, 6 Barb. 386;
*Still v. Hal*, 20 Wend. 51.

In *Lufburrow v. Henderson*, 30 Ga. 482, recoupment
of damages in such cases is spoken of as being an "im-
provement upon the old doctrine of failure of considera-
tion. It looks through the whole contract, treating it as
an entirety, and treating the things done and stipulated
to be done on each side as the consideration for the things
done and stipulated to be done on the other. When
either party seeks redress for the breach of stipulations in
his favor, it sums up the grievances on each side instead of
the plaintiff's side only, strikes a balance, and gives the
difference to the plaintiff, if it is in his favor." When
the plaintiff herein demanded payment of the first bill,
its right to receive or enforce collection of the full amount
depended upon its ability to prove performance of the
contract on its part. If it had not so performed, it had
not furnished the consideration upon which defendant had
promised to pay, and was entitled to demand and receive,
not the full contract price, but the contract price reduced
by the damages which its default had occasioned to the
defendant. Its insistence upon the full contract price
was, upon defendant's theory at least, unjust and exces-
sive. Defendant was fully aware of the injustice, and for
a time refused payment, but in the end did pay and satisfy
the demand upon plaintiff's terms. As said by us in
*Baldwin v. Foss*, *supra*, the party who would resist an

unjust claim "must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom money is demanded it should precede payment." In *Reid v. Field*, 83 Va. 26 (1 S. E. Rep. 395), the seller of goods failed to make a delivery within the time specified. After this breach of the contract the purchaser received the goods, and gave his promissory note for the agreed price. This was held a waiver of his claim for damages, and the same could not be made the basis of a counterclaim in an action upon the note. To the same effect, see *Minneapolis T. M. Co. v. Hutchins*, 65 Minn. 89 (67 N. W. Rep. 807); *Roby v. Reynolds*, 65 Hun., 486 (20 N. Y. Supp. 386). In short, the party who questions or denies the justice of a demand upon him for the payment of money has his choice to make voluntary payment, and thus avoid further trouble and annoyance on that score, or to resist, and take the judgment of a court of competent jurisdiction upon the controversy. If he adopts the former course he is bound by it, and cannot thereafter have recourse to the latter. It follows from the foregoing discussion that the demurrer to the defendant's counterclaim should have been sustained.

II.    On plaintiff's motion the trial court struck from defendant's answer the allegation that at the time of paying the contract price upon the first order for machinery and materials defendant "did not know how much, if any, damages the Mauston Electric Light & Power Company might claim or be able to establish against the defendant," etc. From this order defendant has appealed, but we think it unnecessary for us to consider the question thus raised. In disposing of the principal appeal we have treated the answer as containing the allegation ordered stricken out, and if there was any error in the ruling it was without prejudice.

The judgment of the district court is reversed, and cause remanded for further proceedings in harmony with this opinion. — REVERSED.